UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAMY HAKIM,<br><br>　　　　　Petitioner,<br><br>　　v.<br><br>KRISTI NOEM, *et al.*,<br><br>　　　　　Respondents. | Case No. 5:26-cv-00145-CV (DTBx)<br><br>**ORDER GRANTING APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE RE: PRELIMINARY INJUNCTION [DOC. # 5]** |

　　On December 19, 2025, U.S. Immigration and Customs Enforcement ("ICE") officers arrested Petitioner Ramy Hakim ("Petitioner") during a routine appointment. Petitioner has since remained in detention. Presently before the Court is Petitioner's request for a temporary restraining order ("TRO").

　　On January 13, 2026, Petitioner filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241, against Respondents Kristi Noem, Secretary of the Department of Homeland Security, Todd Lyons, Acting Director of ICE, Pam Bondi, Attorney General of the United States, David Gomez, ICE San Bernardino Field Officer Director, and Fereti

Semaia, Warden of the Adelanto ICE Processing Center ("Respondents") ("Petition"). Doc. # 1 ("Pet.").

On January 14, 2026, Petitioner filed an *ex parte* application for a TRO ("Application"). Doc. # 5 ("App."). Specifically, Petitioner seeks a TRO that (1) orders Respondents to immediately release Petitioner from detention under the terms of his initial release in 2005, and (2) enjoins Respondents from removing him to a third country absent notice and an opportunity to apply for protection under the Convention Against Torture. *Id.* at 9. Respondents filed their opposition to the Application on January 19, 2026. Doc. # 8 ("Opp."). Petitioner filed his reply on January 20, 2026. Doc. # 10.

The Court finds that oral argument is not necessary to resolve the present dispute. *See* Fed. R. Civ. P. 78(b); C.D. Cal. L.R. 7-15; *Willis v. Pac. Mar. Ass'n*, 244 F.3d 675, 684 n.2 (9th Cir. 2001). Having reviewed and considered the parties' briefing, the Court **GRANTS** the Application.

I.     **FACTUAL BACKGROUND**

Petitioner was born in Egypt and entered the United States in 1994. Pet. ¶ 17. On May 19, 2003, Petitioner was convicted for a felony drug-related offense under 21 U.S.C. § 843(b) and was sentenced to 33 months in prison. *Id.* ¶ 18; Doc. # 5-1 ("Tolchin Decl."), Ex. E.

While in criminal custody, Petitioner was placed in removal proceedings in Lancaster, California. Pet. ¶ 19. On June 16, 2004, an immigration judge ordered Petitioner removed to Egypt, but deferred his removal under the Convention Against Torture. *Id.* ¶ 20; Tolchin Decl., Ex. C. Neither party appealed that decision. Pet. ¶ 20.

In 2005, after completing his sentence, Petitioner was transferred to immigration custody where he was held in detention for approximately 90 days. *Id.* ¶ 21. In December 2005, Petitioner was released under an order of supervision ("OSUP") because he could not be removed from the United States. *Id.* Under the OSUP, Petitioner is required to regularly report to immigration authorities, which he has been doing for the past 20 years. *Id.* Petitioner has not violated any other term under the OSUP. *Id.* ¶ 22.

On December 19, 2025, ICE detained Petitioner during a routine check-in. *Id.* ¶ 23. Petitioner received a notice that ICE revoked his OSUP because it was seeking his removal from the United States to a third country. *Id.* ¶ 24–25. Petitioner is currently being held at Adelanto Detention Center. *Id.* ¶ 27. Petitioner is also suffering from medical issues causing him pain and discomfort. *Id.* ¶ 28; Tolchin Decl., Ex. F.

On January 13, 2026, Petitioner filed his Petition against Respondents, raising the following grounds for relief: (1) violation of revocation of release under 8 C.F.R. §§ 241.13(i)(2), 241.4(l), and 241.4(l)(2) ("OSUP Revocation Claim"); and (2) third country removal in violation of due process and the Convention Against Torture ("Third Country Removal Claim"). Pet. at 4–8. Petitioner filed the present Application along with the Petition, requesting the Court to (1) order his immediate release, and (2) enjoin Respondents from removing him to a third country absent notice and an opportunity to apply for protection under the Convention Against Torture. App. at 9.

## II. LEGAL STANDARD

The standards for issuing a TRO and preliminary injunction under Federal Rule of Civil Procedure 65 are the same. *Six v. Newsom*, 462 F. Supp. 3d 1060, 1067 (C.D. Cal. 2020); *see also Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush & Co., Inc.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001) (noting that a TRO and preliminary injunction involve "substantially identical" analysis). Like a preliminary injunction, a TRO is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008).

Under *Winter*, a plaintiff seeking a TRO must establish four elements: (1) a likelihood of success on the merits, (2) that the plaintiff will likely suffer irreparable harm absent preliminary relief, (3) that the balance of equities tip in its favor, and (4) that the public interest favors an injunction. *Wells Fargo & Co. v. ABD Ins. & Fin. Servs., Inc.*, 758 F.3d 1069, 1071 (9th Cir. 2014) (citing *Winter*, 555 U.S. at 20). Courts in this circuit also employ "an alternative 'serious questions' standard, also known as the 'sliding scale' variant of the *Winter* standard," *Fraihat v. U.S. Immigr. & Customs Enf't*, 16 F.4th 613,

635 (9th Cir. 2021), in which the *Winter* elements are "balanced, so that a stronger showing of one element may offset a weaker showing of another." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011). Under this approach, a TRO may be warranted where there are "'serious questions going to the merits and a hardship balance that tips sharply toward the plaintiff," so long as the other *Winter* elements are also met. *Id.* at 1132.

### III. DISCUSSION

Petitioner argues that the Court should order Respondents to immediately release Petitioner from detention because their revocation of his OSUP was not authorized under applicable regulations. App. at 3–6. Petitioner also argues that Respondents should be enjoined from removing him to a third country without notice and an opportunity to apply for protection under the Convention Against Torture. *Id.* at 6–7. The Court analyzes each of these claims below.

#### A. Likelihood of Success on the Merits

As an initial matter, Respondents assert that the Court lacks jurisdiction to hear the instant Petition under 8 U.S.C. § 1252(g). However, it is well settled that Courts have "jurisdiction to decide a purely legal question that does not challenge the Attorney General's discretionary authority[,] . . . even if the answer to that legal question [] forms the backdrop against which the Attorney General later will exercise discretionary authority." *Ibarra-Perez v. United States*, 154 F.4th 989, 996 (9th Cir. 2025) (internal quotation marks, citations, and alterations omitted); *Walters v. Reno*, 145 F.3d 1032, 1052 (9th Cir. 1998). Here, "because Petitioner challenges the lawfulness of his detention during the pendency of his removal proceedings, it is not a challenge to one of the 'three discrete events along the road to deportation' that § 1252(g) applies to." *Rodriguez Cabrera v. Mattos*, No. 2:25-cv-01551-RFB-EJY, 2025 WL 3072687, at *7 (D. Nev. Nov. 3, 2025) (citing *Reno v. American-Arab Anti-Discrimination Committee*, 525 U.S. 471, 482) (1999)); *see also Phakeokoth v. Noem*, No. 3:25-cv-02817-RBM-SBC, 2025 WL 3124341, at *3 (S.D. Cal. Nov. 7, 2025) ("Here, Petitioner does not challenge the legitimacy of his

September 2004 order of removal. Rather, Petitioner challenges the legality of his present detention which does not require judicial review of ICE's discretionary authority to decide 'when' or 'whether' to execute a removal order."). Therefore, § 1252(g) does not deprive the court of jurisdiction.

### i. OSUP Revocation Claim

Petitioner argues that he must be released because Respondents' revocation of his OSUP was not authorized under applicable regulations, namely 8 C.F.R. § 241.13(i)(2) and 8 C.F.R. § 241.4(l).

The detention, release, and removal of noncitizens with an order of removal is governed by 8 U.S.C. § 1231(a). Under Section 1231, when a noncitizen is ordered removed from the United States, the Attorney General must effectuate removal within 90 days. 8 U.S.C. § 1231(a)(1)(A). Detention is mandatory during the 90-day removal period. *Id.* § 1231(a)(2)(A).

If a noncitizen is not removed within this period, they must be released "subject to supervision under regulations prescribed by the Attorney General." *Id.* at § 1231(a)(3). However, Section 1231(a)(6) authorizes the Attorney General to continue the 90-day detention period for certain categories of noncitizens, including "inadmissible aliens, criminal aliens, aliens who have violated their nonimmigrant status conditions, and aliens removable for certain national security or foreign relations reasons, as well as any alien 'who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal.'" *Zadvydas v. Davis*, 533 U.S. 678, 688 (2001); *see also* 8 U.S.C. § 1231(a)(6).

Where a noncitizen subject to a final removal order has been released on an order of supervision, 8 C.F.R. §§ 241.13 and 241.4 authorize ICE to revoke release and re-detain the noncitizen in limited circumstances.[1] First, ICE may revoke release when a noncitizen

---

[1] Additionally, when ICE revokes an OSUP, the regulations require ICE to provide (1) notice of the reasons for revocation, and (2) an "informal interview . . . to afford the alien an opportunity to respond to

5

violates a condition of their OSUP. *Id.* §§ 241.4(l)(1), 241.13(i)(1). Second, ICE may revoke release when, "on account of changed circumstances, [ICE] determines that there is a significant likelihood that the [noncitizen] may be removed in the reasonably foreseeable future." *Id.* § 241.13(i)(2). Third, certain officials may exercise their discretion to revoke release.[2] *Id.* § 241.4(l)(2). Respondents bear the burden of demonstrating that ICE's revocation of release is authorized by the regulations. *See Gutierrez v. Noem*, No. 5:25-cv-02668-DOC-RAO, 2025 WL 3247769, at *4 (C.D. Cal. Oct. 31, 2025); *Nazarian v. Noem*, No. EDCV 25-02694-KK-ADSx, 2025 WL 3236209, at *5 (C.D. Cal. Nov. 3, 2025); *Sun v. Noem*, No. 3:25-cv-02433-CAB-MMP, 2025 WL 2800037, at *2 (S.D. Cal. Sept. 30, 2025).

Here, Respondents do not identify in their opposition brief the basis on which they re-detained Petitioner and whether that basis is authorized under the regulations. However, the notice provided to Petitioner indicates that Respondents re-detained him because they are now seeking his removal to a third country, which arguably constitutes a "changed circumstance" under 8 C.F.R. § 241.13(i)(2). *See* Pet. ¶¶ 24–25. But notwithstanding the notice, the record is devoid of any evidence that Petitioner's removal is significantly likely to occur in the reasonably foreseeable future. For example, Respondents have not identified a third country to which they seek Petitioner's removal, nor have they provided any detail regarding any requests made to a third country for travel documents. Courts have consistently rejected government assertions of "changed circumstances" where the record

---

the reasons for revocation stated in the notification." 8 C.F.R. § 241.13(i)(3). Petitioner acknowledges that ICE notified him that his release was revoked due to his pending removal to a third country. Pet. ¶¶ 24–25. Petitioner does not appear to challenge the sufficiency of this notice or the subsequent informal interview.

[2] Specifically, the regulations authorize the Executive Associate Commissioner to revoke release upon determining that: "(i) The purposes of release have been served; (ii) The alien violates any condition of release; (iii) It is appropriate to enforce a removal order or to commence removal proceedings against an alien; or (iv) The conduct of the alien, or any other circumstance, indicates that release would no longer be appropriate." *Id.* § 241.4(l)(2). The regulations also authorize a district director to revoke release for the aforementioned reasons when "revocation is in the public interest and circumstances do not reasonably permit referral of the case to the Executive Associate Commissioner." *Id.*

contains such scant evidence of imminent removal. *See Gutierrez v. Noem*, 2025 WL 3247769, at *4 ("[T]he absence of any travel documents suggests that Petitioner was not going to be imminently removed."); *Sun v. Noem*, 2025 WL 2800037, at *2 (rejecting changed circumstances argument where the only supporting evidence was respondents' claim that they were "preparing to apply" for necessary travel documents); *Hoac v. Becerra*, No. 2:25-cv-01740-DC-JDP, 2025 WL 1993771, at *4 (E.D. Cal. July 16, 2025) ("Respondents' intent to eventually complete a travel document request for Petitioner does not constitute a changed circumstance" and "does not make it significantly likely he will be removed in the foreseeable future."); *Nguyen v. Hyde*, No. 25-CV-11470-MJJ, 2025 WL 1725791, at *4 (D. Mass. June 20, 2025) (rejecting changed circumstances argument where respondents claimed they were processing a travel document but did not identify "what concrete steps ICE has taken to process" the document or whether ICE submitted the request to the removal country); *Roble v. Bondi*, No. 25-cv-3196 (LMP/LIB), 2025 WL 2443453, at *4 (D. Minn. Aug. 25, 2025) (rejecting changed circumstances argument where the only supporting evidence was that ICE "requested third country removal assistance from [Enforcement and Removal Operations] HQ") (alteration in original).[3]

Respondents argue that, under *Zadvydas v. Davis*, 533 U.S. 678 (2001), Petitioner—not Respondents—bears the burden to show that his removal is not likely to occur in the reasonably foreseeable future.[4] In *Zadvydas*, a noncitizen subject to a final removal order argued that the government had improperly prolonged his detention even though his removal was not imminent. *Zadvydas*, 533 U.S. at 684–85. In response, the Supreme Court

---

[3] Petitioner also argues that neither Executive Associate Commissioner nor the District Director exercised their discretionary authority to revoke release under 8 C.F.R. § 241.4(l), as neither officer signed Petitioner's revocation notice. App. at 4–5. Petitioner further argues that he has not violated any term of his release, and that ICE therefore cannot revoke his OSUP on that basis either. *Id.* Respondents do not address these arguments and therefore concede them.

[4] Respondents also argue that a ruling against them "would be tantamount to finding that no detainee can be timely removed to a third country." Opp. at 6. Not so. The Court's ruling has no impact on the government's authority to remove Petitioner to a third country. Rather, it merely holds that ICE must follow its own regulations in re-detaining Petitioner prior to removal. Nothing more.

1  held that detentions of less than six months are "presumptively reasonable," but once the
2  six-month period expires, the burden shifts to the government if the noncitizen "provides
3  good reason to believe that there is no significant likelihood of removal in the reasonably
4  foreseeable future." *Id.* at 701. Respondents argue that, under *Zadvydas*, Petitioner bears
5  the burden because he has only been detained for approximately four total months,[5] which
6  is less than the six-month period articulated in *Zadvydas*. Opp. at 3–6.

However, Respondents misconstrue Petitioner's claim. Unlike the noncitizen in *Zadvydas*, Petitioner does not challenge the length of his detention. Rather, Petitioner asserts that ICE's revocation of his OSUP was not authorized by its own regulations. Therefore, ICE's regulations—not *Zadvydas*—govern the present case. And ICE's regulations place the burden on Respondents—not Petitioner—to show changed circumstances that make removal significantly likely in the reasonably foreseeable future. *Sun v. Noem*, 2025 WL 2800037, at *2 ("ICE's own regulations [] place the burden on ICE to show changed circumstances that make removal significantly likely in the reasonably foreseeable future."); *Gutierrez v. Noem*, 2025 WL 3247769, at *4 (same); *Nazarian*, 2025 WL 3236209, at *5 (same). Respondents have not met that burden here.[6]

Accordingly, Petitioner is likely to succeed on the merits of his OSUP Revocation Claim.

---

[5] The four months includes Petitioner's (1) 90-day detention in 2005, and (2) approximately one month in detention since December 19, 2025. *See* Pet. ¶¶ 3–4; *see also Luu v. Bowen*, No.: 5:25-cv-03145-MEMF-SP, 2025 WL 3552298, at *6 (C.D. Cal. Dec. 11, 2025) (finding that courts must consider prior periods of detention in calculating whether a petitioner's detention is beyond the presumptive six-month period).

[6] Respondents also argue that they have satisfied the procedural requirements to re-detain Petitioner under 8 C.F.R. § 241.13(i)(3) by providing (1) notice of the reasons for revocation, and (2) an informal interview to afford Petitioner an opportunity to be heard. Opp. at 6. Respondents further argue that, if this Court were to find that these procedures were deficient, releasing Petitioner from detention would be an improper remedy. *Id.* at 6–7. The Court need not address these arguments because it makes no ruling on the sufficiency of the required notice and interview.

ii. Third Country Removal Claim

Petitioner next argues that Respondents should be enjoined from removing him to a third country without notice and an opportunity to apply for protection under the Convention Against Torture. App. at 6–7. Respondents do not oppose Petitioner's request for this relief in their opposition brief.

Under the Due Process Clause of the Fifth Amendment to the United States Constitution, no person shall be "deprived of life, liberty, or property, without due process of law[.]" U.S. Const., amend. V. The due process guarantee extends to deportation proceedings. *Ortega v. Kaiser*, No. 4:25-cv-05259-JST, 2025 WL 1771438, at *3 (N.D. Cal. June 26, 2025) (citing *Torres-Aguilar v. I.N.S.*, 246 F.3d 1267, 1270 (9th Cir. 2001)). As such, "[a] noncitizen must be given sufficient notice of a country of deportation that, given his capacities and circumstances, he would have a reasonable opportunity to raise and pursue his claim for withholding of deportation." *Aden v. Nielsen*, 409 F. Supp. 3d 998, 1009 (W.D. Wash. 2019) (citing *Mathews v. Eldridge*, 424 U.S. 319, 349 (1976) and *Kossov v. I.N.S.*, 132 F.3d 405, 408 (7th Cir. 1998)). "In the context of country of removal designations, last minute orders of removal to a country may violate due process if an immigrant was not provided an opportunity to address his fear of persecution in that country." *Ortega*, 2025 WL 1771438, at *3 (citing *Najjar v. Lunch*, 630 Fed. App'x 724 (9th Cir. 2016)).

Here, it appears that Respondents did not designate a country for removal other than Egypt. Additionally, an immigration court ordered Petitioner's removal to Egypt be deferred under the Convention Against Torture. Therefore, there are no countries to which Petitioner could currently be removed without first being afforded notice and opportunity to be heard on a fear-based claim as to that country. Thus, Petitioner has shown that there is a serious question on the merits of his Third Country Removal Claim. *See e.g.*, *Ortega*, 2025 WL 1771438, at *3 (finding a serious question as to the merits of the noncitizen petitioner's claim where an Immigration Judge ordered his removal to El Salvador deferred

under the CAT and no other country had yet been designated). As stated above, Respondents did not oppose relief on this basis

### B. Irreparable Harm

Petitioner is likely to suffer irreparable harm absent a TRO because he is being detained, which constitutes an irreparable loss of liberty. *See Arevalo v. Hennessy*, 882 F.3d 763, 767 (9th Cir. 2018) ("Deprivation of physical liberty by detention constitutes irreparable harm."). Petitioner is also likely to suffer irreparable harm in the form of separation from his family and community. *See Nazarian*, 2025 WL 3236209, at *6 ("[I]mmigration detention imposes collateral irreparable harms on noncitizens' families, including economic burdens and harms to children whose parents are detained.") (citing *Hernandez v. Sessions*, 872 F.3d 976, 995 (9th Cir. 2017)). Accordingly, the likelihood of irreparable harm factors weighs in favor of Petitioner.

### C. Balance of the Equities and Public Interest

Where the government is the opposing party, balancing of the equities and the public interest merge. *See Nken v. Holder*, 556 U.S. 418, 435 (2009). Thus, the Court asks whether any significant "public consequences" would result from issuing the preliminary injunction. *Winter*, 555 U.S. at 24.

The Ninth Circuit has recognized "neither equity nor the public's interest are furthered by allowing violations of federal law to continue." *Galvez v. Jaddou*, 52 F.4th 821, 832 (9th Cir. 2022) (affirming the balance of hardships weighed in favor of plaintiffs alleging the government violated the Immigration and Nationality Act). Specifically, in cases involving removal, "there is a public interest in preventing [noncitizens] from being wrongfully removed." *Nken*, 556 U.S. at 435.

Here, Respondents argue that there is public interest in enforcing immigration laws. Opp. at 8–9. But their interest in enforcing immigration laws is not compelling because they failed to show that Petitioner's re-detention was legally authorized. "[O]ur system does not permit agencies to act unlawfully even in pursuit of desirable ends." *Ala. Ass'n of Realtors v. Dep't of Health & Hum. Servs.*, 594 U.S. 758, 766 (2021) (citing *Youngstown*

*Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 582, 585-86 (1952)); *see also Cmty. Legal Servs. in E. Palo Alto v. U.S. Dep't of Health & Hum. Servs.*, 777 F. Supp. 3d 1039, 1045-46 (N.D. Cal. 2025), *appeal dismissed*, No. 25-2358, 2025 WL 1189827 (9th Cir. Apr. 18, 2025) ("[C]ourts regularly find that 'there is generally no public interest in the perpetuation of unlawful agency action.'") (quoting *League of Women Voters of U.S. v. Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016)) (alterations removed). Accordingly, the balance of equities weighs in favor of Petitioner.

### D. Bond

The security bond requirement of Fed. R. Civ. P. 65(c) is waived. The Court has "discretion as to the amount of security required, if any" and "may dispense with the filing of a bond when it concludes there is no realistic likelihood of harm to the defendant from enjoining his or her conduct." *Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003).

## IV. CONCLUSION

For the foregoing reasons, the court **GRANTS** Petitioner's Application and **ORDERS** as follows:

1. Respondents are **ORDERED** to immediately release Petitioner from custody, subject to the conditions of his prior order of supervision, and are enjoined from re-detaining Petitioner without compliance with 8 U.S.C. § 241.4(l) and 8 U.S.C. § 241.13(i).

2. Respondents are **ENJOINED** from removing him to a third country absent notice and an opportunity to apply for protection under the Convention Against Torture.

3. To preserve the Court's jurisdiction, Respondents are enjoined from transferring, relocating, or removing Petitioner outside of the Central District of California pending final resolution of this case or further order of the Court, unless executing a final order of removal issued against Petitioner.

4. This temporary restraining order shall take immediate effect and expires at 5:00 p.m. PT on February 5, 2026. The temporary restraining order may be extended for good cause or upon Respondents' consent.

5. Respondents are ordered to show cause why a preliminary injunction should not issue. *See* C.D. Cal. L. R. 65-1. Respondents must file any written response to the Order to Show Cause no later than January 29, 2026. Failure to file a response by this deadline shall be deemed as consent to the granting of a Preliminary Injunction. Petitioner shall file a reply no later than February 3, 2026.

6. The Court shall decide, after reviewing the parties' papers, whether to hold a hearing on the Order to Show Cause or to take the Order to Show Cause under submission.

**IT IS SO ORDERED**.

Dated: 1/22/26

*Cynthia Valenzuela*
HON. CYNTHIA VALENZUELA
UNITED STATES DISTRICT JUDGE